**Robert Lee MASON, Appellant,**

v.

**MATHIASEN TANKER INDUSTRIES, INCORPORATED, Appellee.**

**No. 8312.**

United States Court of Appeals
Fourth Circuit.

Argued April 12, 1961.

Decided Jan. 3, 1962.

Sidney H. Kelsey, Norfolk, Va., for appellant.

Harry E. McCoy, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Plaintiff, Robert Lee Mason, was a seaman oiler on the tanker "Mission Capistrano," owned by the United States Navy but operated under license by the defendant, Mathiasen Tanker Industries, Inc. On September 29, 1958, plaintiff fell while aboard and was injured. In his action to recover damages, he complains, (1) under the Jones Act, that his injuries were caused by the negligence of the employer-defendant and (2) by the unseaworthiness of the vessel.

During a trial which lasted several days, the jury heard much conflicting evidence on the issue of defendant's liability for negligence and unseaworthiness. It was shown that Mason's work required him to hourly oil the bearings on two blowers located on a platform near the top of the multilevel engineroom. Plaintiff's witnesses testified that the blower bearings leaked oil and that there was, during a great part of every day, excessive oil on the deck of the blower platform and that plaintiff was required to wade through this oil in the performance of his regular duties. Defense witnesses either denied the presence of any oil on the blower platform or questioned the amount of oil there. Plaintiff claimed that his shoes became soaked with oil from the blower platform deck and this oil in his shoe soles caused him to slip while descending the steep steel stairs (called ladders aboard ship) connecting the several levels of the engineroom and to fall down an inclined ladder, equipped with handrails, landing on the steel evaporator flat which is one level below the floor of the main engineroom. There were no eye witnesses to the accident. It is undisputed, however, that plaintiff sustained serious injuries in the fall and that he had to be removed from the ship at sea to a hospital in Charleston, South Carolina, and from there transferred to the United States Public Health Service Hospital in Savannah, Georgia. He was hospitalized from the time of the injury until October 21, 1958, when he was discharged and certified as fit for duty within a week's time. Mason returned to

Norfolk, Virginia, and was there examined by a psychiatrist. He was again certified as fit for duty on November 3, 1958, by the Norfolk Marine Hospital where he was an out-patient. After filing this action on November 14, 1958, Mason returned to the Norfolk Marine Hospital for further out-patient treatment. He was again discharged as fit for duty on December 24, 1958.

A special verdict was returned by the jury as follows:

### "VERDICT OF JURY

"1. Were the defendant, its officers or crew members (other than plaintiff) guilty of any negligence which was a proximate cause of the accident and injuries sustained by plaintiff on September 29, 1958?

YES [x]      NO [ ]

"2. Was the vessel MISSION CAPISTRANO unseaworthy as defined in the charge of the Court and was such unseaworthiness a proximate cause of the accident and injuries sustained by plaintiff on September 29, 1958?

YES [x]      NO [ ]

"3. Was the plaintiff guilty of any contributory negligence which was a contributing proximate cause of the accident and injuries sustained by plaintiff on September 29, 1958?

YES [x]      NO [ ]

"4. On the claim for damages, including any claim for loss of wages, if you conclude that plaintiff is entitled to recover, what amount is the plaintiff entitled to recover?

$2,000.00

"5. On the claim for maintenance, on what date did the plaintiff obtain his maximum recovery following his injuries on September 29, 1958, as defined in the charge of the Court?

December 24, 1958"

Plaintiff appeals from the jury's determination of damages, claiming that the $2000 award is inadequate in view of the

serious nature of his injuries, his loss of wages over an extended period of time (he claims that he was able to work less than three months during the period from the date of injury to the trial in January 1960) and his pain and suffering at the time of the accident. He contends that the alleged inadequate verdict was the result of errors committed during the course of the trial. We do not express any opinion on the *adequacy* of the award as found by the jury, but we conclude that the plaintiff is entitled to a new trial on the sole issue of damages. The jury determined the issue of liability against the defendant and the court entered judgment thereon. The defendant has not appealed.

█ Plaintiff first argues that the District Judge abused his discretion in permitting defendant's counsel to ask him (Mason), on cross-examination, if he had ever been convicted of a felony in Virginia. The judge, who had been forewarned that defense counsel would ask such a question and that plaintiff's counsel would object, prepared a written statement which he read to the jury after the question was asked and the plaintiff was required to answer. A portion of the record is reproduced below.[1]

1. "(By Mr. McCoy) Mr. Mason, have you ever received a criminal conviction of a felony in Virginia?

"MR. KELSEY: If Your Honor please, this is very unfair. I want to make an objection to this.

"THE COURT: Now, let's not make a speech. We have been over this before.

"MR. KELSEY: I raise my objection and ask the Court to instruct the jury about such a question.

"THE COURT: All right. Get your objection in first.

"MR. KELSEY: I object to the Court's admitting any conviction of a felony in this case, the proposed or proffered offer to prove such a felony being almost twenty years ago, on the grounds that it has no probative value, it is immaterial and irrelevant in every way and, further, upon the objection and ground that his own watch officer has testified, and will testify in a deposition to be introduced in this case, that the man is an honest or truthful man, so far as he knows, and that something that happened twenty years ago has nothing whatsoever to do with this case and I object to it.

"THE COURT: The objection is overruled. After you get the answer, though, I want to tell the jury something.

"MR. McCOY: I understand that.

BY MR. McCOY:

"Q. I ask you the question, Mr. Mason, have you ever received a criminal conviction of a felony in Virginia?

"A. I have, and also—

"MR. KELSEY: Just a moment. You have, and that is all.

"THE COURT: Ladies and Gentlemen of the Jury, I would like to make a few comments with respect to that portion of this evidence. In a conference prior to the trial of this case, counsel for the defendant advised the Court and opposing counsel that they intended to introduce in the record the plaintiff's prior conviction of a felony during the year 1939, I believe.

"Is that correct, Gentlemen?

"MR. McCOY: Yes, sir.

"MR. KELSEY: Yes, sir.

"THE COURT: It is a generally accepted rule that where a witness or a party litigant testifies in a case, evidence of a prior conviction of a felony involving moral turpitude may be considered by the jury in determining the credibility of the evidence of the party testifying. The Court has examined the conviction in question and it does involve a crime involving moral turpitude.

"MR. KELSEY: May we ask the Court to state what that conviction was?

"THE COURT: Yes, sir, if you want it. The conviction was for store breaking. It is solely for this purpose that this evidence is admissible. The person charged with a crime in 1939 has paid his debt to society and under no circumstances should you as jurors hold against him the fact that he may have erred or committed a crime approximately twenty years ago—in fact, now, I guess, almost twenty-one years ago—at a time when he was then approximately nineteen years old; you may, however, consider the fact of a prior conviction of a felony in determining the extent of the credibility of the plaintiff's testimony as given by him from the witness stand. Of course, Ladies and Gentlemen, we are not concerned with the plaintiff's credibility in 1939; what we want to ascertain is his worthiness of belief in the year 1960, that is, today as he testifies, and the fact that the con-

We find no abuse of discretion in permitting defense counsel to attack the credibility of the plaintiff by inquiring about an earlier felony conviction. Certainly, the credibility of the plaintiff was very much in issue because there were no eye witnesses and he was presenting his own version of the accident. The District Judge carefully pointed out to the jurors that a long period of years had elapsed since the conviction and that plaintiff had paid his debt to society for that violation of the law; the conviction was to be considered by the jury only as affecting the plaintiff's credibility and was not to be used as a basis for penalizing him in the determination of damages. Goddard v. United States, 131 F.2d 220 (5th Cir. 1942), involved a criminal prosecution, but there a witness was questioned about a felony conviction some twelve years earlier. Appropriate in this case is the language of that court as follows:

> " * * * It is well settled that such evidence is admissible for purposes of impeachment, and whether the circumstance of the conviction was such that the fact ceased to have probative value was a question addressed to the sound discretion of the trial court. That discretion was not abused by the admission of this evidence." 131 F.2d at 221.

■ Cf. Sinclair Refining Co. v. Southern Coast Corp., 195 F.2d 626 (5th Cir. 1952); Fire Ass'n of Philadelphia v. Weathered, 62 F.2d 78 (5th Cir. 1932). The fact that here the witness is a party to the litigation is immaterial. Where a party elects to make himself a witness he may be cross-examined as such. Simon v. United States, 123 F.2d 80, 85 (4th Cir.), cert. denied, 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555 (1941).

■ Plaintiff next contends that the court erred in submitting to the jury the issue of plaintiff's contributory negligence. We have read the entire record of the trial and we fail to find any evidence of contributory negligence on the part of plaintiff. During the course of the trial in response to questions propounded by his own counsel, Mason testified that on several occasions, from ten months to many years earlier, he had fainted while on duty as oiler in a ship's engineroom. Mason explained the reason he had fainted on each occasion: Once he had influenza; on another occasion while his ship was operating in the tropics he was overcome by the heat in the engineroom; a third fainting spell was caused by food poisoning; once he was "lightheaded" because of the "grippe." Plaintiff also introduced into evidence two small bottles of pills[2] which had been prescribed for him by the United States Public Health Service Hospital for a nervous condition six months prior to the accident and which were found in his locker aboard ship after the accident.[3] Mason testified that he had not taken any of the pills for the past several months preceding the accident. There was no evidence to indicate that Mason was taking the pills or was subject to their effect in any way just prior to the accident. Mason was cross-examined at length concerning these matters but the defendant was unable to show any specific connec-

viction took place a little more than twenty years ago, at a time when the plaintiff was of a youthful age, may be considered by you in determining whether this prior conviction has any bearing upon his present credibility.

"Finally, may I say to you, if you ultimately conclude that this plaintiff is entitled to recover in this case, he should not be penalized one cent for the fact that he has previously been convicted for a crime in 1939.

"All right. You may proceed with the next question."

2. The testimony revealed that the tranquilizer drugs in the pills are known as "Reserpine" and "Belbarb."

3. It is explained that plaintiff's counsel was aware of defendant's knowledge of the fainting spells and the discovery of the pills; also, he had reason to believe that if the plaintiff failed to mention these facts on his direct examination, defense counsel would bring them out on cross-examination and thus create the false impression with the jury that the plaintiff was deliberately concealing information.

tion between the earlier fainting spells and the pills, and the accident. Mason steadfastly denied that he fainted at the time of the accident. It was, to some extent, apparent that the defendant, by insinuation, would have the jury infer that a fainting spell caused the plaintiff to fall.

The District Judge carefully instructed the jury that all evidence as to the pills should be disregarded. However, the court charged the jury concerning contributory negligence and the effects of such negligence on its verdict if it should find that the plaintiff's own negligence contributed to his injury. There was no attempt to call to the jury's attention any evidence which might tend to prove contributory negligence, and our inspection of the record has failed to reveal any such evidence which the court might properly have told the jury to consider. It was clear to the court that the evidence did not disclose any relationship between the pills and accident and the jury was told, in effect, that it could not find that plaintiff's injury was in part caused by taking the medicine which had been prescribed for him. There was no evidence tending to show even the remotest connection between the earlier fainting spells experienced by the plaintiff and his fall down the ship's ladder. Nor was there evidence to link the accident with Mason's sickness some five months earlier, diagnosed as "anxiety reaction," a symptom of which, according to testimony *may* be faintness. After treatment in March 1958, Mason was declared fit for duty, and there is no evidence to show that he knew or had reason to believe that he was subject to fainting spells as a result of the illness experienced in the spring before the accident.

No witness testified that plaintiff failed to grasp the handrail which was provided for anyone using the ladder, or that he failed, in any respect, to take proper precaution to insure his own safety. Juries cannot be permitted to speculate on what might or could have happened without supporting evidence. Here defendant had the burden to prove by a preponderance of the evidence Mason's contributory negligence. United States v. Smith, 220 F.2d 548 (5th Cir. 1955). No direct evidence was introduced to meet this burden. It cannot be reasonably argued that the physical facts involved in the fall could be accepted as evidence of Mason's failure to grasp the handrails or take other precautionary measures. It is a matter of common experience that a person can slip on a stairway, due to extremely slippery conditions, with such force that his hands would be loosened from the rail. No inference to the contrary could properly have been drawn by the jury from the evidence in this record. Counsel for the plaintiff requested the court to charge the jury that there was no showing of any connection between the fainting spells and the accident and no evidence whatever of any negligence on the part of the plaintiff which contributed to his injuries. Instead, the charge was given concerning contributory negligence and the jury was permitted to speculate that in some way the plaintiff's own negligence may have caused him to fall. We believe this was error which may have affected the amount of the verdict.

■■ Defendant contends that *if* a new trial is awarded there must be a relitigation of the liability issue as well as the issue of damages. No authority is cited to support this contention. Rule 59(a), Federal Rules of Civil Procedure, 28 U.S.C.A., expressly provides for the granting of a new trial "on all or part of the issues * * * in an action in which there has been a trial by jury * * *." It is well settled that, in admiralty cases, contributory negligence may minify plaintiff's damages but a finding of such negligence does not automatically defeat plaintiff's claim of liability against the defendant for injuries resulting from unseaworthiness or negligence. The issues of liability and damages are clearly separable although this court has indicated cognizance of the fact that the size of the verdict may, in itself, indicate a jury compromise of the liability issue and a finding for plaintiff based primarily on

sympathy.[4] Mason here appeals from the finding of contributory negligence resulting in a verdict of challenged adequacy and the defendant has not appealed from the adverse determination of the liability issue. There was ample evidence to support the jury's finding of defendant's liability and nothing to point the finger of suspicion to the verdict on that issue as a compromise. Where the issues are separable and error is found in the trial of only one, a new trial may be had as to that issue alone where no injustice will result therefrom. Indamer Corp. v. Crandon, 217 F.2d 391 (5th Cir. 1954); Yates v. Dann, 11 F.R.D. 386 (D.Del. 1951); 6 Moore, Federal Practice, para. 59.06, p. 3759 ff. (1953); cf. Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). Defendant's liability having been determined, we are of the opinion that the plaintiff is entitled to a new trial on the sole issue of damages.[5]

Reversed and remanded for new trial on damage issue alone.

HAYNSWORTH, Circuit Judge (dissenting).

I would affirm.

There was no direct testimony that Mason did not grip the handrails of the ladder, as he testified he did. There could be no direct testimony on the point, aside from Mason's own, for Mason was alone at the time. The jury might reasonably have drawn the inference that he was not holding on to the handrails with each of his hands from the fact of his fall and the extent of his injuries. The handrails are provided as means by which members of the crew could protect themselves from a slip of the foot when descending the ladder. Mason, himself, recognized in his testimony that due care on his part

required that he grip them firmly with either hand. He said his foot slipped on the main engine room deck before he had actually placed a foot upon the ladder, but he was approaching it and had already firmly grasped the handrails. If he had done that, the jury might reasonably have concluded that he would not have fallen, or would have checked his fall at the main engine room level and would not have fallen all the way to the deck below. I think the jury could reasonably find that the handrails, properly used, would have served their intended purpose. Of course, the jury might have drawn the other inference too, but ultimate inferences from evidentiary facts are for the jury. Bearing in mind the fact of the fall and the circumstances, there seems to me a permissible inference that Mason was not firmly holding on to the handrails.

On the contributory negligence point, the burden of persuasion was upon the ship's operator, but that does not mean that the issue may not go to the jury, unless the issue arises upon testimony affirmatively offered by the defense. It can arise from the testimony introduced by the claimant, and, in considering the submissibility of the issue, that testimony should be viewed in the light most favorable to the defense. The jury was not bound to accept Mason's testimonial assertion that he held on to the handrails. Though there was no direct contradiction of that assertion, because no one was present to give any other testimonial version of the occurrence, the fall and the surrounding circumstances seem to furnish a reasonable basis for an inference that Mason did not hold on to the handrails as he claimed. If that be so, the issue of contributory negligence was properly submitted to the jury.

4. See Schuerholz v. Roach, 58 F.2d 32 (4th Cir.), certiorari denied, 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541 (1932); Southern Ry. v. Madden, 224 F.2d 320 (4th Cir. 1955); Southern Ry. v. Madden, 235 F.2d 198 (4th Cir.), certiorari denied, 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed. 2d 244 (1956). See also as to separa-

bility of awards for compensatory and punitive damages Atlantic Coast Line R. R. v. Bennett, 251 F.2d 934 (4th Cir. 1958).

5. On a retrial, proper evidence, if any, of plaintiff's contributory negligence may be presented to the jury in mitigation of damages.

In the familiar situation of the railroad grade crossing accident where the motorist testifies that he looked but did not see the train, the physical circumstances may make his testimonal assertion so incredible that the court should withdraw the plaintiff's case from the jury. If the physical facts are not conclusively persuasive of the incredibility of the testimonial assertion, the inference is one for the jury. Whether the physical circumstances are such as to require, or merely to permit, an inference contrary to the testimonal assertion of the motorist, the inference may be drawn out of the physical circumstances, notwithstanding the fact that there is no direct contradiction of the testimonial assertion.

If our differences were limited to our appraisal of the sufficiency of the evidence to support the submission to the jury of the question of contributory negligence, I would be inclined to defer to the view of my brothers, for a dissent founded upon such differences serves little purpose. I am moved to express my views, however, for the terms of the remand seem to me at variance with the established policies of this court.

At the trial, there was a conflict in the evidence bearing upon the claimed negligence of the ship's operator and the claimed unseaworthy condition of the ship. There was ample evidence to support a finding that there was no oil on the deck of the blower platform, no oil on the plaintiff's shoes, no negligence of the ship's operator, and no unseaworthy condition which contributed to the injury. The jury, to which the whole case was submitted, resolved the issue of primary negligence and unseaworthiness in Mason's favor, but resolved the issue of contributory negligence against him and found damages in his favor in the sum of only $2,000. His principal ground of appeal is inadequacy of the damages. His attorney asserts that Mason's damages, including loss of wages, would conservatively be estimated in the neighborhood of $35,000. There is much reason to suppose that the jury did in fact compromise the issues of liability and of damages.

The verdict, on the whole, was much more favorable to the defense than to Mason. There is nothing to demonstrate that the jury which heard the case, if the issue of contributory negligence had been withdrawn from it, would have found the ship at fault and have awarded Mason his damages in full measure. Any jury, which had the case submitted in full to it, might well find that the ship was without fault and deny any recovery to Mason.

If there is to be a retrial, I think the retrial should be on the whole case, so that the issues of liability and damages may be determined by the same jury at the same sitting. This has been the consistent position of this court in cases which I find altogether comparable. Atlantic Coast Line Railroad Company v. Bennett, 4 Cir., 251 F.2d 934; Southern Railway Company v. Madden, 4 Cir., 235 F.2d 198; Southern Railway Company v. Madden, 4 Cir., 224 F.2d 320; Schuerholz v. Roach, 4 Cir., 58 F.2d 32.

From repeated reference to the fact that the ship's operator did not appeal from the judgment against it, there is intimation that it may have thereby prejudiced its right to a retrial of the whole case, if it is to be retried at all. On the conflicting evidence, there was no basis for an appeal by the ship's operator. It had no alternative, except to support the judgment against it for the very modest amount of money awarded to Mason by the jury. The fact that it did not take a baseless appeal should have no adverse effect upon its rights at a subsequent trial. Nor should the absence of a cross appeal becloud the fact that the jury which heard the case may have tailored its findings on the issues of negligence and contributory negligence to fit a predetermined damage award, an award which Mason claims to be shockingly inadequate.

Under these circumstances, if there is to be a new trial of any issue, I think the issue of liability, as well as of damages, should be retried and both issues submitted to another jury.